Moncure, J.
delivered the opinion of the court.
The court is of opinion that the court below did not err in excluding the testimony mentioned in the first bill of exceptions.
It may well be questioned whether the mere fact of payment of a debt secured by a deed of trust on personal property, after the estate of the trustee has become absolute by the default of the debtor in paying the debt according to the terms and conditions of the deed, would be a legal defence to an action brought by the trustee to recover the property. The trustee generally knows nothing of the state of accounts between the debtor and creditor, and would be liable to be taken by surprise by such a defence; especially when it is offered, as it was in this case, under the general issue. To ascertain the fact of payment, it might be necessary for the jury, on the spur of the occasion, with defective materials, and without proper explanations, to settle complicated accounts, which could be settled much more conveniently and correctly in a court of equity. Until the act of April 16, 1831, Sess. Acts, p. 63, the defendant in an action at law, brought by a trustee to recover land conveyed by a deed of trust to secure a debt, was not allowed to prove in his defence the payment of the debt. That *566 act for the first time, allowed him to do so: hut, to guai’d against surprise, provided that he should give in writing to the adverse party of his intention £0 majie suci1 (}efence sixty days before the trial. The provision on this subject in the Code, p. 560, § 21 and 22, extends to property generally; but it does not apply to the case under consideration, having been enacted after the case occurred. It may be important, however, as serving to show the views and policy of the legislature in regard to such a defence. It is said .that a difference exists between real and personal estate in this, -that the title to the former can only be conveyed by deed, whereas the title to the latter may be transferred without deed, and even without writing. This is true; and there can be no doubt but that a trustee of personal estate may transfer or release the title thereto by act in pais. But it may well be doubted whether the mere fact of payment of the debt secured by the deed of trust, without the knowrledge of the trustee and after his estate had become absolute, would amount to a release of the legal title to the estate.
It is unnecessary, however, to decide that question in this case. The record in the suit of Patterson v. Campbell, &c. offered in evidence by the defendant in error, conclusively shows that the debt secured by the deed of the 26th of January 1824, was not satisfied and discharged by a sale of the slaves Mary, Caleb and Nelson at the price of nine hundred and fifty dollars, as the plaintiff in error offered to prove by parol. It shows that the price of these slaves wras applied to the payment of the bond for three thousand dollars secured by the deed of the 22d of December 1822, and not the bond for seven hundred and fifty-two dollars and fifty-seven cents secured by the deed of the 26th of January 1824. When these slaves were sold, Patterson desired to apply the price of them in the first place to the *567 payment of the small bond. His only motive for this desire seems to have been to take in the small bond, as the payment would have been more than enough to satisfy it, but not enough to satisfy the large bond. It was thus a matter of comparative unimportance to him how the credit was applied. On the other hand, it was a matter of great importance to the creditor Campbell, who “ considered the small bond as better secured than the large one, and that by applying the credit to the large one, he would be increasing his security.” He therefore insisted on such application, and the debtor Patterson consented to it. This is the statement made in the answer of Campbell’s executor, in response to an allegation contained in Patterson’s bill, and before the execution by Patterson of the deed of trust under which the plaintiff in error claims. On the application of the credit thus made, the subsequent proceedings in the suit are based; and they are in no respect inconsistent therewith. In the statement made by Commissioner Johnson in 1828, the credit was applied to the large bond. In the decree of the 27th of October 1828, that statement, to which there was no objection by either party, was approved, the injunction was dissolved as to a portion of each bond, and the marshal was directed to sell so much of the property conveyed by each deed of trust as might be sufficient to discharge the respective portions aforesaid and the expenses of the sale. The sale was accordingly made in February .1829, and on the 29th of May 1830, the marshal’s report, to which there was no exception, was confirmed, and the money, which had been paid into bank, was ordered to,,be paid to Campbell’s executors. These decrees have not been reversed or annulled by any subsequent proceeding in the suit. The decree of the 25th of November 1831 directed a portion of the money which had been received by Campbell’s executors under the former decrees, to be *568 refunded; but did not disturb the application which kad been made of the credit aforesaid. The only object of the statement on which that decree was foun(je(j waS; ascertain the amount to be refunded according to the Views of the court. But there was an appeal from that decree, which was reversed by this court, in Campbells v. Patterson, 11 Leigh 113; and the court, proceeding to pronounce such decree as the court below ought to have pronounced, dissolved the injunction as to the further sum of one thousand eight hundred and eight dollars and seventy-two cents, with interest from the 23d of February 1829, perpetuated it as to the residue, and allowed the appellants to enforce their deeds of trust on the property not already sold by the marshal, so far as might be necessary for the payment of the said sum and interest and the costs of the sale. That sum appears to have been ascertained to be due by a statement made by President Tucker, referred to but not set out in his opinion in the case. It does not expressly appear of what items, the statement was composed. There can be no doubt, however, but that it was composed of the same items which compose the statement made by Commissioner Johnson, under that branch of the decree of the 27th of October 1828, which directed him to state the accounts between the parties allowing the legal rate of interest. The only difference between the two statements being that in that of Commissioner Johnson the interest is brought down to the 1st of May 1830, while in that of President Tucker interest is calculated only to the 29th of February 1829, (probably the day of the marshal’s sale,) and the amount made by the marshal is then deducted, leaving due on that day the said sum of one thousand eight hundred and eight dollars and seven-two cents. It was not stated in the decree of this court w’hat portion of that sum was due on the small bond. But it sufficiently appeared in the *569 record that such portion was the amount of the bond, seven hundred and fifty-two dollars and fifty-seven cents, with interest from the 26th of January 1S24, subject to a credit for three hundred and twenty-two dollars and fifty-three cents, made by the marshal in February 1829, under the decree of the 27th of October 1828 as aforesaid. If no part of the said sum of one thousand eight hundred and eight dollars and seventy-two cents had been due upon the small bond, as would have been the case if the court had intended to change the application which had been made of the credit of nine hundred and fifty dollars, and apply it to that bond, it would not have been proper to have allowed the appellants to enforce the deed securing that bond. But a portion of it being due upon each bond, it was proper to allow them to enforce each deed. ■ The court certainly did not intend to make the property conveyed by each deed liable for the sum due on both bonds; but only to allow the appellants to enforce each deed on the property thereby conveyed for the payment of so much of the said sum as was due on the bond thereby secured.
The plaintiff in error claiming under a deed of trust executed by Patterson in March 1829, pending the suit and after the credit of nine hundred and fifty dollars’ had been applied as aforesaid, is bound by the said application and all the other proceedings in the suit. And this observation applies as well to the price of Caleb, though embraced in the deed executed "to secure the small bond, as to the price of the other two of the three slaves sold for the said sum of nine hundred and fifty dollars.
The court is further of opinion that the court below did not err in excluding the testimony mentioned in the second bill of exceptions.
Even if a defendant in an action of detinue brought by a trustee to recover the trust subject, would be; *570 permitted to prove, in his defence under the general ^ssue> that he had fully paid the debt secured by the deed before the institution of the suit, but after the period fixed in the deed for its payment, he certainly should not be permitted to prove under the general issue in such an action, that he had paid the debt or any part of it after the institution of the suit. Partial payment, whether before or after the institution of the suit, could afford no defence at law, in any form, to such an action. And if full payment made, in whole or in part, after the institution of the suit, could afford such a defence, it could only be by a plea to the further maintenance of the suit, or puis darrein continuance, according as the payment is made before or after plea pleaded ; and the defendant would at least be liable for the costs of the action.
The record of the suit of Patterson v. Campbell, which is made a part of the bill of exceptions, shows that long after the institution of this action, in October 1835, a large balance was due on the small bond. When the decree of this court was rendered on the 13th of April 1840, the only credit applicable to the debt was the sum of three hundred and twenty-two dollars and fifty-three cents, made by the marshal as before stated; and the amount due on the’small bond, as ascertained by the record, was the original principal, with interest from its date, subject to the said credit. The record shows no other payment on account of that bond. The net proceeds of Lucy and her child, sold by the sheriff under the decree of the 23d of October 1841, and purchased by the plaintiff in error at the price of five hundred and ten dollars, would have been applicable to the payment of the said bond. But the sheriff" reported that he was enjoined from making the payment; and it does not judicially appear to this court that the injunction has been dissolved; the last proceeding in the case which *571 the record shows being an order made on the 28th of May 1842, confirming the sheriff’s report. Even if the proceeds of that sale were applied to the of the bond, a large balance would still remain due thereon. The question as to the balance due on. the bond was directly in issue in the suit; and the plaintiff in error, (who claims title as a purchaser under Patterson pending the suit, and was made a party thereto after it went back from this court,) is bound by the proceedings therein. The record showing that a balance was due on the bond when the action was instituted, its payment since, even if proved, would, as we have seen, afford no defence to the action, at least under the general issue.
The,court is further of opinion, that the court below did not err in excluding the testimony mentioned in the third bill of exceptions, the question of usury having been decided in the case of Campbells v. Patterson, 11 Leigh 113, and the plaintiff in error being concluded by that decision.
The court is further of opinion, that the court below did not err in refusing to give the instruction asked for by the plaintiff in error, and mentioned in the fourth bill of exceptions.
Even if the evidence offered by the plaintiff in error had tended to convict Gray, one of the administrators of Campbell, of a fraud, in standing by and making no objection to the sale to the plaintiff in error, it is not perceived that it would have been admissible. Frauds of that kind generally afford defences, and grounds for relief, only in equity. There is a class of cases, to which Pickard v. Sears, 6 Adolp. and Ellis, 469, 33 Eng. C. L. R. 115, belongs, in which it has been held that where a person entitled to personal property (which may pass by sale or delivery without writing) stands by and makes no objection to the sale of it to another, the fact may be left to the jury as *572 evidence tending to show that he sanctioned the sale, an^ cease(l be the owner. This case cannot fall that class, because the title to the property wag no|. |T1 (^-ray, nor in all the administrators of Campbell; but in the trustees under the deed of trust: and the act of Gray in standing by and making no objection to the sale, could not have the effect of divesting the trustees of the legal title.
But in truth the evidence offered afforded no ground whatever for imputing fraud to Gray. It does not appear that his presence or silence at the sale misled the plaintiff in error, or in any manner affected the transaction. On the contrary, it appears that the latter must have had notice of the adverse claim, the deed of trust under which the sale was made having been executed after the recordation of the deed of trust under which the defendant in error claims, and pending the suit of Patterson v. Campbells.
The court is further of opinion, that the court below did not err in excluding the testimony mentioned in the fifth bill of exceptions.
There is no such decree in the record as that referred to in the bill of exceptions. It appears, however, from the assignment of errors and argument of the counsel for the plaintiff in error, that the decree intended to be referred to was the order awarding the injunction; and the point intended to be raised is that the action having been brought pending an injunction of proceedings on the deed of trust, there was then no right of action.
The injunction did not have the effect of divesting the trustees of the legal title, and did not in any manner affect it. If the institution of this action founded on that legal title had been a violation of the injunction, the trustees would have been guilty of a contempt of the court which awarded it; and the remedy would have been by a proceeding in that court to punish *573 the contempt. The court of chancery acts in personam, and not upon the court of law, which must decide all cases coming before it according to the rights of the parties.
But in truth the institution of the action at law was no violation of the injunction, which was only intended to stop the sale under the deed of trust. The assertion of the legal title by the trustees, against a person holding and claiming against it pending an injunction of the sale, might be a measure of precaution, necessary to the protection of the rights and interests, both of the debtor and the creditor. The court in which the injunction is pending might in some, and perhaps most cases, afford such protection, but the legal remedy seems to be free from doubt or difficulty.
If the evidence of the award or pendency of the injunction was inadmissible to defeat the action, it was also inadmissible to mitigate the damages. If the trustees were entitled to recover the slaves, they were entitled also to recover the hires of the slaves from the time that they were held adversely, and at least from the time of the institution of the action. They were entitled to recover the slaves, because in law they were theirs: And if the slaves were theirs, so also were the hires. If the injunction of the sale had been still pending when the slaves were recovered in the action, the trustees, after obtaining possession under the judgment, might have hired them out and received the hires until the injunction was dissolved or perpetuated ; and it would then have, been their duty, in the former case, to apply the trust subject (consisting of slaves and hires) to the purposes of the trust, and in the latter to account for and deliver it to the grantor or his assigns. Where the trust subject is likely to be inadequate to the purposes of a trust, it might be very convenient and proper for the trustee to recover possession, and receive the profits pending an injunction *574 of the sale. Whether the whole subject or its profits will be required to meet the purposes of the trust, is question which cannot be settled or raised in an acl]on a-f; ]aw.
The court is further of opinion, that the court below did not err in refusing to give the instruction mentioned in the sixth bill of exceptions. That the remedy in this case survived to the surviving trustee after the death of his cotrustee pending the action, is shown by the case of Rose's adm'x v. Burgess, 10 Leigh 186, in which the point was expressly decided.
The court is further of opinion, that the court below did not err in excluding the testimony mentioned in the seventh and last bill of exceptions. ,
The effect of the decree of the 23d of October 1841, in appointing the sheriff of Bedford a commissioner for the purposes therein mentioned, was not to divest the surviving trustee of the legal title; nor to destroy the right of action in this case which had been pending for six years, and thereby, perhaps, secure to the plaintiff in error a title to the subject in controversy under the act of limitations. The sheriff had a right, as commissioner under the decree, to control and manage this case in its further prosecution; and to use the name of the surviving trustee in any other suit which might be necessary to recover possession of any part of the trust subject.
Judgment affirmed.